O’Neall, J.
The opinion of the Court at the last Term fixed the rule by which the Commissioner should have made up his report. The case was then regarded as one in which hire for the slaves, as ascertained by, the £10 rule, or by an estimate of what their hire was worth, would not be a proper allowance to the defendant. He was put on the footing of a part owner with his cestui que trust, and held to be entitled to a proportionate share of the crops. The opinion then expressed, was not a hasty one — it was formed with great care, a proper sense of what was due to the parties, conformably to the established rules of the Court. The £10 rule never was applied to a case in which accounts of the proceeds of the labor of the slaves were kept; nor can it be applied to cases where there is proof showing that they have been employed but a few years, in which the crops were uniformly good, and the prices not subject to material diminution. If, in neither of these cases, the £10 rule could have an application, it follows that the opinion of witnesses, of the price for which similar negroes could have been hired, constitutes no guide to ascertain the value of their labor.
The true question, is, how much did their services yield ? This, in the case before us, is susceptible of an easy answer.* Ascertain the whole number of negroes employed on the plantation, during the years 1822, ’3, ’4, ’5 and ’6, and the amount of the crops, and state a proportion — as the whole number of the negroes employed is to the amount of the crops, so will the twenty-five belonging to Mr. Yaux, be to the share of the crops made by them. From this, must be deducted, in the same proportion, their share of the rent, and the balance will be the gross allowance to be made to the defendant. This, divided into five parts, will constitute the annual allowance to be made to him, in each of these years, for the services of the slaves.
It is, however, objected, that Mr. Yaux forfeited all benefit of this allowance, by not attending the commissioner on the reference. To say nothing of the short notice of the reference, and the hasty manner in which the Commissioner thought proper to conduct and close it, it will be *143 enough for our present purpose to say, that the defendant’s default did not authorize the Commissioner to reverse the opinion of the Court of Appeals, and set up a. rule of accounting of his own, not authorized by any thing in the cause. It was his duty, if he went on ex parte, to have made up the accounts on evidence furnished by the complainants ; but in doing so, the rule fixed by the Court should have been his guide.
It is said, it was impossible to allow Mr. Yaux a proportion of the crops, unless he attended and furnished the evidence of the number of slaves belonging to the estate. To me it appears that the complainants could easily, had it been necessary, furnished that evidence. They are the present owners and have them .in possession, and if they had shown how many they received on their marriage, exclusive of the twenty-five, the Commissioner might have taken that as the number, during the previous years, and made up his accounts accordingly. But there was no necessity to have gone beyond the papers in the cause. It is stated, in the defendant’s answer, that the negroes of the estate amounted to seventy-three, when he turned them over to the complainants. This was either inclusive or exclusive of the negroes now in dispute, and without proof, the Commissioner might very well have concluded that it was exclusive, and this * would have made the whole number of the negroes employed, ninety-eight; and thus, one part- of his proportion was ascertained. The amount of crops for ’22, ’3, ’4 and ’5, he has ascertained and reported from the defendant’s accounts ; the crop of ’26 was partially made when the complainants married, and the complainant, Frazier, received it; the-amount of it he could and ought to have furnished, and thus the second part of the proportion could be obtained, and then nothing remained but to set down the twenty-five negroes belonging to the defendant, and the proportion was completed; and any one acquainted with the rule of three could have produced an answer showing the gross allowance in favor of the defendant, from which would be deducted his proportion of the rent; and the nett result would be the whole allowance to the defendant for the labor of his slaves.
But whether the problem was of hard or easy solution, it was the business of the" Commissioner to pursue the directions of the Court, and not undertake to adopt his own notions of what was right and proper. If he could not get on without Yaux’s presence, and he had refused to attend, he ought to have applied to the Court for fresh instructions, or he might have been authorized by the Court to attach the defendant until he did attend. The rule is a familiar-one, that the Commissioner must conform to the instructions given to him by the Court.
In Remsen v. Remsen, 2 J. C. R. 501, Chancellor Kent says—“ Orders of reference should specify the principles on which the accounts are to be taken, or the inquiry proceed, as far as the Court shall have decided thereon, and the examination before the Master should be limited to such matters within the limits of the order, as the principles of the decree or order may render necessary.” The Commissioner, according to these observations, ought to have confined his examination to such matters as were within the limits of the order. He was directed to inquire what sum out of the crops the defendant should receive as a part owner entitled to a share; and instead of making an attempt to ascertain it, he recommends the allowance of hire, which the Court had before repudiated, and *144 in its place had directed the account as between* part owners. To allow such a report to stand, is to make the Commissioner the appellate jurisdiction, instead of the Court.
In Lupton v. White, 15 Ves. 432, the Master reported that he could not make up the accounts, on account of the uncertainty of the evidence. It was contended in that case, as in this, that the Master ought to have charged the defendants with the whole produce of the mines, inasmuch as they had not kept clear and distinct accounts, which they ought to have done. The Lord Chancellor held, that it was the subject of further directions, and -not of exception. He remarks, “If the result is that the Master cannot take the account, it is clearly not for him, without a further direction, to apply the great principle, familiar both at law and in equity, that if a man, having undertaken to keep the property of another distinct, mixes it with his own, the whole must, at law and in equity, be taken to be the property of the other, until the former puts the subject under such circumstances that it may be distinguished as satisfactorily as it might have been before that unauthorized mixture upon his part. There maybe cases upon which the Master may charge parties upon that principle; but it must be under the direction of the Court, whether the case is proper.”
From the case of Lupton v. White, this principle is to be extracted— that the Commissioner has no right to depart from the instructions by which his account is directed to be made up, if it is even impossible, by the default of the defendant, to conform to them. He must report thé fact, and let the Court give him fresh directions. If the case proceeds ex parte, it is the business of the Commissioner to examine the case more minutely, and attend more particularly to see that justice is administered to the defendant, than if he had attended in person. The proposition is very well enforced by Lord Redesdale, in the case of Carew v. Johnston, 2 Sch. & Lef. 300, in which he says, “The decree having been obtained, the matter proceeds before the Master, and he makes a report which I must consider as the report of the party, and not of the Master. I am afraid reports of this kind are too often made, when no person appears on *one s^e' ^ ^at very improper for it is the duty of the Master to take the account, though the parties who might resist the claim do not attend, with as much care as if they did, and even with more jealousy; for when the parties do attend, it is to be expected that they will attend to their own business.”
In the case before us, the Commissioner can have no difficulty in making up his report according to the directions given, if he will take the trouble to read this and the former opinion before he commences his examination.
The defendant is clearly not entitled to commissions on the receipts and expenditures of years in- which he did not make returns to the Ordinary. In those years in which he made returns, he is entitled to.commissions. This Court has no power to order an issue, to ascertain what extra compensation should be allowed to an executor, when he has failed to make regular returns. The default deprives him of the commissions allowed by law, and also the right to recover extra compensation.
It is ordered and decreed that Chancellor Johnston’s decree be reversed,' and that the cause be remanded with instructions to the Commissioner, to *145 mate up bis report according to the principles contained in the former and this opinion.
Earle, J., concurred.